# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**MICHAEL N. SCOTT,**

    **Plaintiff,**

**vs.**                                                        **Case No. 4:08cv313-MP/WCS**

**SERGEANT AUBREY AMAN,**
**and JERRY KRAMER,**

    **Defendants.**

    _____/

## REPORT AND RECOMMENDATION

After the conclusion of discovery, Defendants filed a motion for summary judgment. Doc. 57. I entered an order advising the *pro se* Plaintiff of his burden in opposing summary judgment, doc. 58, and Plaintiff was given several extensions of time in which to file his response. Docs. 60, 64, 70, and 74. Plaintiff has now filed his response, doc. 75, and Defendants' motion is ready for a ruling.[1]

---

[1] Although Plaintiff titled his response as a "statement of facts" (it is titled "statement of facts" on the docket) and his own "motion for summary judgment," doc. 75, he does not specifically make a request for summary judgment in his favor. It will be construed only as a response and not as Plaintiff's own summary judgment motion.

**Allegations of the second amended complaint, doc. 20**

Plaintiff alleges that on February 13, 2007, while housed at Taylor Correctional Institution, he told Sergeant Aman that he had a "psychological emergency." Doc. 20, p. 8. An hour and one half later, he told the same thing to the Assistant Warden and the Warden ordered Sergeant Aman, Defendant here, to telephone "mental health." *Id.* Plaintiff states that Aman placed him in handcuffs, leg shackles, with a chain around his waist securing the handcuffs to his mid-section. *Id.*

Plaintiff alleges that he was led to the breeze way, stopped, and ordered by Sergeant Aman and Officer Kramer, another Defendant, to turn around. *Id.*, p. 9. Plaintiff alleges that Aman came around the corner with five other officers, told the other officers "let's do it," and slammed Plaintiff's face into the plexiglass window, causing Plaintiff to fall and lose consciousness. *Id.* Plaintiff asserts that the officers then punched and kicked him. *Id.* He asserts that his face was turned by Officer Murry and Kramer, and Aman repeatedly punched me in the face. *Id.* He asserts that Sergeant Aman than "started running around in a circle shouting, 'do you know where your [sic] at? You are at Taylor CI! You are at Taylor CI! Do you know that boy?' " *Id.* He asserts that Sergeant Aman shouted repeatedly at him that they would kill him. *Id.* He asserts that Officer Murry pushed his face back to the floor, kicked his temple, and his head "swelled up like a balloon." *Id.* He was then taken to the "mental health doctor." *Id.* Plaintiff states that he could not walk, and was dragged, and told that he better not say a word about what happened. *Id.*, p. 9(a). Plaintiff said that the doctor got the prison inspector, and the prison inspector took 10 or 15 photographs of him. *Id.* He said the doctor gave him some pain medication and told the officers to return Plaintiff to

his cell because "they don't want anything to do with this problem." *Id.* He was then transferred to Charlotte Correctional Institution. *Id.*

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co.,

475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion."  The Local Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  The Local Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there is a genuine issue to be tried, using the same format.  Facts set forth in Defendants' statement will be deemed admitted (if supported by the record evidence) unless controverted by Plaintiff's statement.

**The relevant Rule 56(e) evidence**

The events at issue in this case occurred while Plaintiff was still incarcerated within the Florida Department of Corrections and was housed at Taylor Correctional Institution. Defendants were, at that time, employed at Taylor C.I. as a Correctional Sergeant (Aman) and a Correctional Officer (Kramer). Doc. 57.

On February 13, 2007, at approximately 1:28 p.m. alleged that he took twenty two pills. Doc. 57, pp. 3-4; Exhibit B (Aman Affidavit) (Doc. 57-2, pp. 6-7).[2] Defendant Aman notified the medical department, put restraints on Plaintiff, and took him to the shower. *Id.* Sergeant Philman and Officer Murray[3] arrived in the dormitory to assist Defendant Kramer in escorting Plaintiff to the medical unit. *Id.* Defendant Aman had no further interaction with Plaintiff and stayed in the dormitory to finish paperwork. *Id.* Defendant Aman testifies in his affidavit that he was not present when the incident occurred outside the dormitory. *Id.* Further Defendant Aman states that he never threatened Plaintiff nor said to the officer, "Let's do it" as if inciting an attack on Plaintiff. *Id.*

At the same time that they were preparing to escort Plaintiff out of the dormitory, inmate James Cathey was cleaning the windows outside the south entrance to J-Dorm. Doc. 57, p. 4; Exhibit C (Affidavit of James Cathey) (Doc. 57-2, pp. 8-9). Inmate Cathey

---

[2] Hereafter, all references to exhibits are to those attached to document 57, unless otherwise noted. References are to the paper copy and page number, followed by a reference (in parenthesis) to the corresponding document and page in the electronic docket. Both citations are referenced as a pro se litigant will not have access to the court's electronic docket.

[3] Plaintiff spells this name as "Murry." "Murray" is probably the correct spelling.

Case No. 4:08cv313-MP/WCS

had stretched a water hose across the concrete stoop and had already wet down the door and the stoop. *Id.* Inmate Cathey avers in his affidavit that as he saw Officer Murray, Defendant Kramer, Sergeant Philman and Plaintiff approach the door, he attempted to pull the hose out of the way, but as the officers and Plaintiff Scott exited the dorm, Plaintiff's feet got tangled in the water hose and he began to fall. *Id.* Plaintiff hit his face on the concrete wall and then as he continued to fall, he struck his face on the concrete stoop. *Id.* Inmate Cathey saw Officer Murray attempt to catch Plaintiff before he fell, but he was not successful. *Id.*; *see also* Exhibit D (Affidavit of Defendant Kramer) (Doc. 57-2, p. 10). Officer Murray, Sergeant Philman, and Defendant Kramer then escorted Scott to the medical department. *Id.* Inmate Cathey never saw any of the officers abuse Plaintiff. *Id.* After they left, inmate Cathey cleaned off two small drops of blood on the door stoop. *Id.*

Defendant Kramer confirms that he arrived at J-Dormitory to escort Plaintiff to the medical unit. Ex. D (Doc. 57-2, p. 10). Defendant Aman did not assist in escorting Plaintiff from the dormitory. *Id.* Defendant Kramer's testimony is consistent with inmate Cathey's, that Plaintiff tripped and fell over the water hose as they exited the building. *Id.* Defendant Kramer also confirms that Officer Murray attempted to catch Plaintiff as he fell but was unable to do so. *Id.* Officers Murray, Kramer and Sergeant Philman then continued taking Plaintiff to medical, where he was evaluated. *Id.*, at 11. Defendant Kramer testified that at no time did he or any other officer threaten Plaintiff or slam his face into the plexiglass window. *Id.* He also avers that at no time did he or any officer "hit, kick, or punch" the Plaintiff. *Id.*

Sergeant Philman also submitted an affidavit in support of summary judgment. Doc. 57, Exhibit E (Doc. 57-2, p. 12). His testimony is in agreement with that of Defendant Kramer and inmate Cathey. *Id.* He states that Plaintiff fell, that no officer harmed Plaintiff, and that Defendant Aman was not present during this escort. *Id.* Sergeant Philman also notes that when they arrived in the medical unit, Plaintiff said "that he fell and hit his face." *Id.*

Plaintiff arrived in the medical unit at approximately 2:00 p.m. and was evaluated by L.P.N. Smith who completed an Emergency Room record and noted: "I/M noted to have trauma sustained to face." Exhibit F (doc. 57-3, p. 1). Nurse Smith noted:

> Large swollen area under L eye also L eyebrow. Noted swollen area to L temporal area. R eyebrow with small swollen area. Also swollen under R eye. Ears visualized normal. Pupils round, equal reactive. [Oriented in 3 spheres.] Speech clear, gait steady. [illegible] with normal findings. Has scratches noted left shoulder blade area.

*Id.* L.P.N. Smith also completed a Diagram of Injury Form describing Plaintiff's injuries as: "large amount of swelling under L eye, L eyebrow, L temporal area also R eyebrow and R orbital." Exhibit G (doc. 57-3, p. 2). When Nurse Smith provided notes in Plaintiff's chronological record of health care, she noted that "I/M refuses to elaborate as to what happened to cause facial swelling." Exhibit H (doc. 57-3, p. 3).

When Psychologist Barnes evaluated Plaintiff, Plaintiff alleged staff abuse. Exhibit I (Doc. 57-3, p. 5). Ms. Barnes noted the following:

> On February 13, 2007, at approximately 1430 hours, while assessing Inmate Scott, Michael DC# 867815, reports he was housed in Annex Confinement and Officers took him from his cell to shower then to the area surrounding the Control Room. Sgt. Philman pounded Inmate's face with his fists according to Inmate Scott. Officer Murray "kicked me in my balls and everything." He said Officer Cramer and Murray pushed his head into the concrete wall and told him "don't say anything about this or we'll kill you." He says, "there were a bunch of them, over 10 or 12, all of them

were kicking and punching me." He alleged he was cuffed while this occurred. The OIC was notified per protocol.

*Id.* Officer in Charge (OIC) Valentine wrote the following comment on the Incident Report:

> Inmate Scott received an alleged staff abuse medical assessment and the following injuries noted: has large amount of swelling under left eye, left eyebrow, left temporal area also right eyebrow and right lower orbital. Inmate Scott was placed in I2-103S for SOS. Copy of emergency room record and diagram of injury attached. Copy Inspector A. Land with this report and all attachments. Forward for further review.

*Id.* After an investigation by the Inspector General's Office, Plaintiff's allegations were found to be unsubstantiated. Exhibit M (Doc. 57-3, p. 9).

Plaintiff has presented his own version of the facts which differs considerable from the Defendants' version. Doc. 75. Plaintiff has stated that on February 13, 2007, Defendant Aman came to his cell and handcuffed him to take him to the medical department for "mental health" treatment or evaluation. *Id.* Plaintiff was first taken by Defendant Aman to the shower area where he was left and Defendant Aman said he would be back. *Id.* Plaintiff avers he was left there for approximately twenty-five minutes before the Defendant returned. *Id.* When he returned, he was accompanied by Defendant Kramer and Officer Murray. *Id.* Officer Murray shackled Plaintiff with leg shackles as well as the "black bow" handcuff device. *Id.* Then Defendant Aman told Plaintiff to turn and face the plexiglass window. *Id.* Plaintiff states that Defendant Aman then went around the corner, returned with about seven other officers and said, "Let's do it." *Id.* Plaintiff states that Aman, Murray, Kramer and the other seven officers began punching him, hitting him, and kicking him. *Id.* During the attack, Plaintiff said the Defendant Aman repeatedly told him, "we'll kill you boy." *Id.* Plaintiff avers that

after they stopped beating him, they escorted him to the medical unit. *Id.* Plaintiff testified that he was beaten very badly. *Id.* Plaintiff said that when they were taking him to medical, they told him that he better not say anything about what had happened. *Id.* Plaintiff says they threatened to kill him if he said anything. *Id.*

**Analysis**

Plaintiff's version of the events directly contradicts Defendants' version. I recognize that Plaintiff's response, doc. 75, is not in the proper form. Plaintiff states at the end of his statement of facts that: "This is the truth, the whole truth so help me God." Doc. 75, p. 3. Plaintiff did not sign the bottom of that page, but he signed the next page under the statement "I swear to tell the truth so help me God." *Id.*, at 4. On page five of his response, Plaintiff again states: "Everything that was said in this document is the truth so help me God." *Id.* Plaintiff is *pro se* and leniency is required. Plaintiff tried to present his allegations of fact under oath or penalty of perjury. Therefore, it is accepted that this document is the equivalent of a sworn affidavit for purposes of Rule 56.

A claim that excessive and unnecessary force was used by correctional officers is founded upon the Eighth Amendment and requires a showing of "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Relevant to the inquiry will be "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Id.* at 320; *see e.g.*, Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991); Ruble v. King, 911 F.Supp. 1544, 1554 (N.D. Ga. 1995). In evaluating such a claim, courts "must balance the 'prisoner's Eighth Amendment rights

with the competing institutional concerns for the safety of prison staff and inmates.'" Ruble, 911 F.Supp. at 1554, *quoting* Williams, 943 F.2d at 1575.

Furthermore, while the absence of serious injury is relevant to an excessive force claim, that does not end the inquiry. Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998), *citing* Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). In Hudson v. McMillian, the Court stated that "the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997), *quoting* Hudson, 503 U.S. at 10, 112 S. Ct. at 1000 (considering the "physical injury" requirement of the PLRA). "[T]he injury must be more than *de minimus*, but need not be significant." Siglar, 112 F.3d at 193.

As noted by the Supreme Court, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." 503 U.S. at 7, 112 S. Ct. at 999; *see also* Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996), *cert. denied* 520 U.S. 1257 (1997). This is only one part of the inquiry. If prison officials did not use force "in a good-faith effort to maintain or restore discipline," but did so "maliciously and sadistically to cause harm" *see* Hudson, 503 U.S. at 7, 112 S.Ct. at 999, an inmate presents a viable claim.

Accepting Plaintiff's version of the events, the use of force in this case, whether *de minimis* injury or not,[4] is the type of force that might be considered by a reasonable jury to be "repugnant to the conscience of mankind." Plaintiff's evidence is that he was

---

[4] The medical evidence is, in my opinion, beyond *de minimis* injury.

Case No. 4:08cv313-MP/WCS

not creating any disturbance, was thoroughly handcuffed and restrained, and that Defendants were not acting in good faith to restore order but, rather, solely to cause him harm and punishment, attacked him without cause or justification. If Plaintiff's testimony were found to be credible, a reasonable jury could find that the use of force against Plaintiff was unnecessary, excessive, and designed to harm him.

Defendants have raised Eleventh Amendment immunity as a defense. The Eleventh Amendment bars suits against the State and its employees in their official capacity for money damages unless waived by the State or Congress. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-103 (1984). The State of Florida has not waived its immunity. Congress has also not waived the immunity of the states through §1983. While Congress could abrogate the immunity of the states, it must express itself without equivocation, and it has not done so here. Pennhurst, 465 U.S. at 99. Therefore, Plaintiff cannot sue Defendants in their official capacities for monetary damages.

Defendants have also raised qualified immunity as a defense to this action. That defense is of no avail if Plaintiff's evidence is true. It has been well settled long before 2007 that correctional officers cannot hit, kick, and punch an inmate in restraints for no reason.

Defendants are correct that this court cannot order that any Defendants be terminated from employment. Plaintiff may also not seek as relief in this civil rights case to have Defendants criminally prosecuted. Doc. 57, p. 18.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 57, be **DENIED in part** as Plaintiff has presented a

genuine dispute of material fact and Defendants do not have qualified immunity. The motion for summary judgment, doc. 57, should be **GRANTED in part** to the extent Defendants are protected by Eleventh Amendment immunity in their official capacities and that this court may not order that Defendants be terminated from employment. It is further **RECOMMENDED** that this case be **REMANDED** for further proceedings.

    **IN CHAMBERS** at Tallahassee, Florida, on August 16, 2010.


                                            s/    William C. Sherrill, Jr.
                                           **WILLIAM C. SHERRILL, JR.**
                                           **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

    **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**